IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| WILLIAM R. SONNENBURG and Wife ) | |
| EARLINE SONNENBURG, ) | |
| SAKHI ABRAHAM, ) | |
| GORDON CLIFTON GOODGAME, JR. ) | Case No. _____ |
| MILLARD RAMSEY and Wife ) | |
| APRIL HARVEY, KATIE G. WARWICK, ) | |
| individually and as representatives ) | JURY DEMAND |
| of all similarly situated persons, ) | |
|  ) | |
| Plaintiffs, ) | |
|  ) | |
| v. ) | |
|  ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. ) | |
| and VOLKSWAGEN, AG, ) | |
|  ) | |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Come now the Plaintiffs, William R. and Earline Sonnenburg, Sakhi Abraham, Gordon Clifton Goodgame, Jr., Millard Ramsey and April Harvey, and Katie G. Warwick (the "Plaintiffs"), by and through counsel, and for their cause of action against Volkswagen Group of America, Inc. and Volkswagen, AG (collectively the "Defendants"), state as follows:

JURISDICTION AND VENUE

1.      The Defendant, Volkswagen Group of America, Inc. is a New Jersey corporation with its offices located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171 and its principal manufacturing facility located at 7351 Volkswagen Drive, Chattanooga, Tennessee. Volkswagen Group of America, Inc. does business in all fifty states and the District of Columbia and, at all times relevant to this Complaint, designed, manufactured, imported distributed, sold,

warranted, advertised and marketed vehicles with the name "TDI® clean diesel engine" that contained a hidden "defeat device" in the ECM software.

2. The Defendant, Volkswagen AG is a German Corporation with its headquarters located, upon information and belief, at Berliner Ring 2, Wolfsburg, Lower Saxony, Germany 38840. Volkswagen, AG does business in all fifty states of the United States and the District of Columbia and, at all times relevant to this Complaint, designed, manufactured, distributed, sold, warranted, advertised and marketed vehicles with the "TDI® clean diesel engine" that contained a hidden "defeat device" in the ECM software.

3. The Plaintiffs William R. and Earline Sonnenburg are individuals residing in Hamilton County, Tennessee at 402 Ohio Avenue, Signal Mountain, Tennessee 37377.

4. The Plaintiff Sakhi Abraham is an individual residing in Miami-Dade County, Florida at 816 Northwest 11th Street, Aprt. 1204, Miami, Florida 33136.

5. The Plaintiff Gordon Clifton Goodgame, Jr. is an individual residing in Roane County, Tennessee at 116 Everest Circle, Oak Ridge, Tennessee 37830.

6. The Plaintiffs Millard Ramsey and April Harvey are married individuals residing in Catoosa County, Georgia at 13 Barnhardt Cir., Fort Ogelthorpe, Georgia 30742

7. The Plaintiff Katie G. Warwick is an individual residing in Hamilton County, Tennessee at 2205 Ashmore Avenue, Chattanooga, Tennessee 37415.

8. This Court has jurisdiction pursuant to 28 U.S.C. §1332(d) as the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and minimal diversity exists.

9. Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. §1391 because a substantial portion of the events, actions or omissions that are the basis of the Plaintiffs Complaint occurred in this District. Several of the Plaintiffs reside in this District or purchased their vehicles in this District and the Defendants have advertised, marketed, manufactured, sold and leased vehicles equipped with the hidden "defeat devices" in this District.

## FACTS

10. From at least 2009 through the present the Defendants have manufactured and sold vehicles in the United States equipped with TDI® clean diesel engines. The models equipped with these engines include the Jetta, Beetle, Audi A3, Golf and Passat.

11. These models were marketed as "clean" when in fact they were not.

12. The Clean Air Act, codified at 42 U.S.C. § 7401-7671q, and the regulations implementing the Clean Air Act, which are administered by the Environmental Protection Agency ("EPA"), require the Defendants to install emission control devices to ensure that diesel vehicles sold in the United States comply with the Clean Air Act. The Clean Air Act and its implementing regulations also require the Defendants to certify that the emissions control devices have been installed, are operating and meet the Clean Air Act standards.

13. From 2009 to the present, the Defendants installed a software "defeat device" in the Jetta, Jetta Sportwagen, Golf, Golf Sportwagen, Audi A3, Beetle, Beetle Convertible, and Passat ("Affected Models") that detected when the car was undergoing emissions testing.

14. The Defendants sold nearly 500,000 of the Affected Models in the United States from 2009 through the present.

15. When the "defeat device" in an Affected Model detected parameters resembling emissions testing, it activated pollution control devices installed in the vehicle to enable the vehicle to pass emissions testing.

16. When the "defeat devise" in an Affected Model does not detect emissions testing, the emission control devices required by the Clean Air Act are turned off – either wholly or partially - and bypassed. Thus, under normal driving conditions, the federally required emissions control devices are either impaired or inoperative allowing the Affected Models to emit pollution

3

greatly exceeding the federal standards. The "defeat device" used by the Defendants in the Affected Models allows up to 40 times the federal standard nitrous oxide to be emitted. Nitrous Oxide is a reactive gas that can contribute to urban smog, asthmatic attacks and other respiratory illnesses.

17. The Defendants installed the "defeat device" intentionally to effect emissions testing.

18. Upon information and belief, the Defendants did not disclose their use of the "defeat device" in their Certificate of Conformity application submitted to the EPA as required by the Clean Air Act and its regulations. Vehicles equipped with "defeat devices" cannot be certified by the EPA and it is illegal to sell such vehicles in the United States.

19. The Affected Models also boasted increased fuel mileage that would not be possible if the emissions control devices were fully operative.

20. The Sonnenburg Plaintiffs purchased a 2009 Volkswagen Jetta with a TDI® clean diesel engine from a Volkswagen dealership in Atlanta, Georgia, which they still own.

21. The Abraham Plaintiff purchased a 2013 Passat with a TDI® clean diesel engine from the Volkswagen dealership in Chattanooga, Tennessee, which he still owns.

22. The Goodgame Plaintiff purchased a 2012 Jetta Sportwagen with a TDI® clean diesel engine from a Volkswagen dealership in Knoxville, Tennessee, which he still owns.

23. The Ramsey-Harvey Plaintiffs purchased a 2012 Jetta Volkswagen with a TDI® clean diesel engine from the Volkswagen dealership in Chattanooga, Tennessee, which they still own.

24. The Warwick Plaintiff purchased a used 2009 Volkswagen Jetta with a TDI® clean diesel engine from a dealership in Chattanooga, Tennessee, which she still owns.

25. The vehicles purchased by the Plaintiffs contained emissions control "defeat devices" which caused the vehicles to defeat emissions tests and allowed them to obtain undue

EPA certifications. At all other times, these vehicles emitted up to 40 times the permitted level of pollutants, including nitrous oxide. These devices were hidden and the Plaintiffs had no knowledge of their existence.

26. The Defendants marketed its vehicles containing the TDI® clean diesel engine as "clean" cars. This was a false representation that the Plaintiffs and the class relied on when purchasing their Volkswagen vehicles.

27. The Plaintiffs purchased their vehicles, at least in part, because of the TDI® clean diesel engines and the representations made by the Defendants, through advertisements, related to the TDI® clean diesel engines. The Plaintiffs all believed they were purchasing "clean" or "green" vehicles that were low emission and high-mileage without sacrificing performance.

28. None of the Plaintiffs were aware that the Defendants had installed a "defeat device" in the vehicle they were considering and ultimately purchased. Had Volkswagen disclosed the existence of the "defeat device" in the Plaintiffs' vehicles, and the results of the "defeat device," none of the Plaintiffs would have purchased their vehicles.

29. The EPA has ordered the Defendants to recall the Affected Models and to repair them to bring them into compliance with the requirements and standards of the EPA and the Clean Air Act.

30. Upon information and belief, the Defendants will not be able to make the Affected Models perform with the same horsepower and efficiency after they are brought into compliance with the federal emission standards.

31. Even if the Defendants are able to comply with the EPA's directive, the Plaintiffs and class members will suffer actual harm and damages since their vehicles will no longer perform as they did when they were purchased or as advertised. The result will be a diminution in the value of the Affected Models and an increase in fuel costs for operation of these vehicles.

5
Case 1:15-cv-00250-HSM-SKL   Document 1   Filed 09/23/15   Page 5 of 20   PageID #: 5

This will be a substantial loss of value due directly to the fraud and misrepresentations of the Defendants.

32. The Plaintiffs and class members did not receive the vehicles they bargained for as a result of the fraudulent misrepresentations and unfair or deceptive business practices of the Defendants. They did not receive "clean" vehicles – quite the opposite.

## TOLLING OF STATUTE OF LIMITATIONS

### Discovery Rule Tolling

33. The Plaintiffs and class members had no way of knowing about the Defendants' deception related to its TDI® clean diesel engine and "defeat device," which employed sophisticated software manipulations. It was only discovered by EPA and California Air Resources Board investigations, which employed significant testing and specialized equipment. The Defendants were clearly intent on expressly hiding their behavior from authorities and consumers.

34. Plaintiffs and class members could not have discovered, through the exercise of reasonable diligence, that Defendants were concealing their use of "defeat devices" and misrepresenting the qualities of the Affected Models, within the applicable statutes of limitations.

35. Plaintiffs and other class members did not discover, and did not know of any facts that would cause a reasonable person to suspect, that the Defendants did not accurately report information within their knowledge to federal authorities, their dealership or consumers; nor would a reasonable and diligent investigation have disclosed that Defendants had information in their possession about the existence of its "defeat device" and that they chose to conceal that information, which was discovered by the Plaintiffs just shortly before this Complaint was filed.

36. For these reason, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to Affected Models.

<u>Fraudulent Concealment Tolling</u>

37. All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

38. Instead of disclosing the "defeat device" or its results on emissions and fuel efficiency, and in disregard of federal and state laws, Defendants falsely represented that their vehicles complied with federal and state emissions standards.

<u>Estoppel</u>

39. Defendants were under a continuous duty to disclose to Plaintiffs and class members the true character, quality, and nature of emissions from the Affected Models, and of their emissions systems, and the compliance of those systems with applicable federal and state law.

40. Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of the emissions systems, and emissions, of the Affected Models.

41. Defendants were also under a continuous duty to disclose to Plaintiffs and other class members that it had employed a "defeat device" to evade federal and state emissions and clean air standards.

42. For these reasons, Defendants are estopped from relying on any statutes of limitations in defense of this action.

CLASS ACTION ALLEGATIONS

43. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action lawsuit and seek certification of the claims and issues on behalf of a Class defined as:

**NATIONWIDE CLASS**

All persons or entities in the United States and District of Columbia who purchased or leased the following vehicles:

> 2009 model year VW Jetta and VW Sportswagen;
> 2010 model year VW Golf, VW Jetta, VW Jetta Sportswagen, and Audi A3;
> 2011 model year VW Golf, VW Jetta, VW Jetta Sportswagen, and Audi A3;
> 2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat;
> 2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat;
> 2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat; and/or
> 2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, Audi A3 and VW Passat;

that contained a "TDI® clean diesel engine."

**TENNESSEE SUBCLASS**

All persons or entities in Tennessee who purchased or leased the following vehicles:

> 2009 model year VW Jetta and VW Sportswagen;
> 2010 model year VW Golf, VW Jetta, VW Jetta Sportswagen, and Audi A3;
> 2011 model year VW Golf, VW Jetta, VW Jetta Sportswagen, and Audi A3;
> 2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat;
> 2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat;
> 2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat; and/or
> 2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, Audi A3 and VW Passat;

that contained a "TDI® clean diesel engine."

**GEORGIA SUBCLASS**

All persons or entities in Georgia who purchased or leased the following vehicles:

> 2009 model year VW Jetta and VW Sportswagen;
> 2010 model year VW Golf, VW Jetta, VW Jetta Sportswagen, and Audi A3;
> 2011 model year VW Golf, VW Jetta, VW Jetta Sportswagen, and Audi A3;
> 2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat;
> 2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat;
> 2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 and VW Passat; and/or

8
Case 1:15-cv-00250-HSM-SKL   Document 1   Filed 09/23/15   Page 8 of 20   PageID #: 8

2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, Audi A3 and VW Passat;

that contained a "TDI® clean diesel engine."

44. Plaintiffs reserve the right to amend the class and subclass definitions if further investigation and discovery indicates such definitions should be narrowed, expanded, or otherwise modified.

45. Specifically excluded from the class and subclasses are individuals who have personal injury claims resulting from the "defeat device" in the "TDI® clean diesel engine"; governmental entities, Defendants and Defendants' officers, legal representatives, employees, subsidiaries, affiliates and assigns; any judge, magistrate, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff; and all persons who make a timely election to be excluded from the class and/or subclasses.

46. NUMEROUSITY. The nationwide class and statewide subclasses are each so numerous that joinder of all members is impracticable. The exact number of class members is uncertain, but is expected to exceed four hundred thousand, and the exact number can only be ascertained from Defendants' books and records. The disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court.

47. PREDOMINANCE OF COMMON QUESTIONS OF LAW OR FACT. This action involves numerous common questions of law and fact which predominate over any question affecting only individual class members, the answers to which will advance resolution of the litigation as to all class members. These common legal and factual issues include:

    a. Whether Defendants engaged in the conduct alleged herein;

    b. Whether Defendants designed, advertised, marketed, distributed, leased, sold, manufactured, or otherwise placed Affected Models into the stream of commerce in the United States;

c. Whether the Affected Models contained a "defeat device" designed to allow the vehicle to pass emissions tests but to violate emissions standards at other times;

d. Whether Defendants concealed the "defeat device";

e. Whether Defendants falsely marketed the Affected Vehicles as "green" or "clean diesels";

f. Whether the "TDI® clean diesel engine" in the Affected Models can be made to comply with the EPA standards without substantially degrading the performance and/or efficiency of the Affected Models;

g. Whether Defendants knew about the "defeat device" and, if so, how long Defendants have known;

h. Whether Defendants' conduct violates consumer protection statutes and other laws as asserted herein;

i. Whether any fix attendant on a recall will result in reduced value of the Affected Models;

j. Whether any fix attendant on a recall will result in higher fuel consumption;

k. Whether any fix attendant on a recall will reduce the horsepower of the Affected Models;

l. Whether Defendants omitted and failed to disclose material facts about the Affected Models;

m. Whether Defendants' concealment of the true defective nature of the Affected Models induced Plaintiffs and class members to act to their detriment by purchasing the Affected Models;

n. Whether Plaintiffs and other class members overpaid for their Affected Models; and

o. Whether Plaintiffs and other class members are entitled to damages and other monetary relief, and, if so, in what amount.

48. TYPICALITY. The claims of the representative Plaintiffs are typical of the claims of the Class Members in that the representative Plaintiffs, like all class members, purchased or leased an Affected Model designed, manufactured, marketed and distributed by Defendants. The representative Plaintiffs, like all class members, have been damaged by

Defendants' misconduct in that they will incur costs and loss of value relating to the "defeat device".

49. FAIR AND ADEQUATE REPRESENTATION. Plaintiffs and Plaintiffs' counsel will fairly and adequately represent and protect the interests of the class. Plaintiffs have retained counsel with experience in prosecuting complex class action litigation. The class interest will be fairly and adequately protected by Plaintiffs and their counsel. Neither Plaintiffs nor their counsel have interests adverse to those of the class.

50. Defendants have acted in a uniform manner with respect to the Plaintiffs and class members. Each Affected Model is defective in the same way. Defendants misrepresented each Affected Vehicle in the ways described herein, and the Plaintiffs and class members are and will be damaged in similar ways.

51. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim. Allowing the prosecution of these claims as separate actions would create the risk of the establishment of incompatible standards of conduct being imposed on Defendants.

52. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief and declaratory relief with respect to the class as a whole appropriate.

53. The questions of law or fact common to class members as set forth above predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. There are no individual questions of liability. Plaintiff is unaware of any litigation in the United States Districts Courts of Tennessee at the time of filing this Complaint. The class action litigation will provide consistency for the class and decrease expenses of all parties and the court system. The

11
Case 1:15-cv-00250-HSM-SKL   Document 1   Filed 09/23/15   Page 11 of 20   PageID #: 11

mlass is manageable because the injuries of the class are similar. Defendants keep records of sales for purposes of issuing recall notices, which will make managing the class attainable. Identifying class members and resolving common liability questions will be manageable.

## COUNT I – COMMON LAW FRAUDULENT CONCEALMENT
(Nationwide Class)

54. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 53 above, as if fully set forth herein.

55. Defendants intentionally designed the "defeat device" to circumvent the requirements of the Clean Air Act, and falsely certified to the EPA that the Affected Models were in compliance with those requirements.

56. At the same time, from 2009 through the present, Defendants intentionally marketed and advertised the Affected Models as "green" or "clean" and described the engine as a "clean diesel engine."

57. Plaintiffs and class members reasonably relied on the Defendants' representations, made in brochures, their website, advertisements, and in the owners' manual, and believed that they were paying a premium for a fuel efficient, "clean" vehicle.

58. Plaintiffs and class members did not know, and could not know, that the representations of Defendants were false.

59. Defendants had a duty to disclose the true facts about the Affected Models to potential and actual customers and to the EPA.

60. Defendants breached their duties in order to profit at the expense of the Plaintiffs, class members, and the public, who were put at risk by the illegally elevated nitrous oxide emissions.

61. If the Plaintiffs and class members had known the true facts about the Affected Models, they would not have purchased their vehicles.

62. If Defendants had disclosed the truth about the Affected Models to the EPA, the Affected Models simply could not have been sold to the Plaintiffs and class members.

63. Defendants are therefore liable to the Plaintiffs and the class for all damages they have incurred and will incur.

64. Defendants acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the Plaintiffs' and class members' rights and the Defendants representations were made with the goal and purpose of enriching Defendants. To the extent permissible, Defendants behavior warrants an assessment of punitive damages in an amount sufficient to deter similar conduct in the future, which amount is to be determined according to the proof.

65. Plaintiffs plead this count on behalf of all members of the Nationwide Class. As necessary, and in the alternative, Plaintiffs stand ready to plead subclasses based on the residences at pertinent times of members of the Nationwide Class, to allege fraudulent concealment under the laws of specific states.

COUNT II – VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT OF 1977
(T.C.A. §47-18-101, et seq.)
(Tennessee Subclass)

66. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 65 above, as if fully set forth herein.

67. This claim is brought on behalf of Plaintiffs Sonnenburg, Abraham, Goodgame, Warwick and the Tennessee Subclass.

68. Defendants, Plaintiffs and the Tennessee class members are "persons" as that term is defined by T.C.A. §47-18-103.

69. Plaintiffs and the Tennessee class member are "consumers" as that term is defined by T.C.A. §47-18-103.

70. Defendants engaged in "trade," "commerce," or "consumer transactions" as those terms are defined by T.C.A. §47-18-103.

71. The Affected Models designed, manufactured, marketed and sold by Defendants are "goods" within the meaning of T.C.A. §47-18-103.

72. The Tennessee Consumer Protection Act of 1977 prohibits unfair or deceptive acts and states in pertinent part:

> (b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
> 2. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods …
> 5. Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …
> 7. Representing that goods … are of a particular standard, quality or grade ... if they are of another ... (T.C.A. § 47-18-104).

73. Defendants sold Affected Models in Tennessee and throughout the United States during the relevant period.

74. Defendants violated the Tennessee Consumer Protection Act of 1977 when they represented, through advertising, warranties, and other express representations, that the Affected Models had characteristics and benefits that they did not actually have.

75. Defendants violated the Tennessee Consumer Protection Act of 1977 when they represented, through advertising, warranties, and other express representations, that the Affected Models were of a particular standard or quality when they were not.

76. Defendants violated the Tennessee Consumer Protection Act of 1977 by intentionally installing "defeat devices" in order to obtain the approval of the EPA and failing to disclose the existence and effects of the "defeat device" in its certification to the EPA.

77. Defendants' violations occurred in connection with Defendants conduct of trade or commerce in Tennessee and throughout the United States.

78. Defendants' violations caused the Plaintiffs and other members of the Tennessee Subclass to purchase their vehicles, which they would not otherwise have purchased had they known the true nature, quality and characteristics of the Affected Models.

79. Defendants willfully and knowingly violated the Tennessee Consumer Protection Act of 1977 with the intent to deceive and mislead Plaintiffs and class members and to induce them to purchase Affected Models at higher prices, which did not match the Affected Models' true value.

80. As a result of Defendants' unlawful business practices, Plaintiffs and members of the Tennessee Subclass are entitled to an award for their actual damages, treble damages, attorneys' fees and costs pursuant to T.C.A. § 47-18-109.

81. Plaintiffs plead this count on behalf of all members of the Tennessee Subclass.

COUNT III – VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
(O.C.G.A.§10-1-390, et seq).
(Georgia Subclass)

82. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 81 above, as if fully set forth herein.

83. This claim is brought on behalf of Plaintiffs Sonnenburg, Ramsey-Harvey and the Georgia Subclass.

84. Defendants, Plaintiffs and the Georgia class members are "persons" as that term is defined by O.C.G.A. §10-1-392.

85. Plaintiffs and the Georgia class member are "consumers" as that term is defined by O.C.G.A. §10-1-392.

86. Defendants engaged in "trade," "commerce," or "consumer transactions" as those terms are defined by O.C.G.A. §10-1-392.

87. The Affected Models designed, manufactured, marketed and sold by Defendants are "goods" as that term is generally understood and used in O.C.G.A. §10-1-392.

88. The Georgia Fair Business Practices Act prohibits unfair or deceptive acts and states in pertinent part:

> (a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful.
> (b) By way of illustration only and without limiting the scope of subsection (a), the following practices are declared unlawful:
>   2. Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods…
>   5. Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …
>   7. Representing that goods … are of a particular standard, quality or grade ... if they are of another … (O.C.G.A. §10-1-393).

89. Defendants sold Affected Models in Georgia and throughout the United States during the relevant period.

90. Defendants violated the Georgia Fair Business Practices Act when they represented, through advertising, warranties, and other express representations, that the Affected Models had characteristics and benefits that they did not actually have.

91. Defendants violated the Georgia Fair Business Practices Act when they represented, through advertising, warranties, and other express representations, that the Affected Models were of a particular standard or quality when they were not.

92. Defendants violated the Georgia Fair Business Practices Act by intentionally installing "defeat devices" in order to obtain the approval of the EPA and failing to disclose the existence and effects of the "defeat device" in its certification to the EPA.

93. Defendants' violations occurred in connection with Defendants conduct of trade or commerce in Georgia and throughout the United States.

94. Defendants' violations caused the Plaintiffs and other members of the Georgia Subclass to purchase their vehicles, which they would not otherwise have purchased had they known the true nature, quality and characteristics of the Affected Models.

95. Defendants willfully and knowingly violated the Georgia Fair Business Practices Act with the intent to deceive and mislead Plaintiffs and class members and to induce them to purchase Affected Models at higher prices, which did not match the Affected Models' true value.

96. As a result of Defendants' unlawful business practices, Plaintiffs and members of the Georgia Subclass are entitled to an award for their actual damages, treble damages, attorneys' fees and costs pursuant to O.C.G.A. § 10-1-399.

97. Plaintiffs plead this count on behalf of all members of the Georgia Subclass.

COUNT IV – VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE
PRACTICES ACT (O.C.G.A.§10-1-370, et seq).
(Georgia Subclass)

98. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 97 above, as if fully set forth herein.

99. This claim is brought on behalf of Plaintiffs Sonnenburg, Ramsey-Harvey and the Georgia Subclass.

100. Defendants, Plaintiffs and the Georgia class members are "persons" as that term is defined by O.C.G.A. §10-1-371.

101. Defendants made use of a "mark" or "trademark" through their use of the "TDI® clean diesel engine" as those terms are defined by O.C.G.A. §10-1-371.

102. The Georgia Uniform Deceptive Trade Practices Act prohibits unfair or deceptive acts and states in pertinent part:

> (a) A person engages in deceptive trade practice when, in the course of his business … he
> 2. Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods …
> 5. Represents that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …
> 7. Representing that goods … are of a particular standard, quality or grade ... if they are of another … (O.C.G.A. §10-1-372).

17
Case 1:15-cv-00250-HSM-SKL   Document 1   Filed 09/23/15   Page 17 of 20   PageID #: 17

103. Defendants sold Affected Models in Georgia and throughout the United States during the relevant period.

104. Defendants violated the Georgia Uniform Deceptive Trade Practices Act when they represented, through advertising, warranties, and other express representations, that the Affected Models had characteristics and benefits that they did not actually have.

105. Defendants violated the Georgia Uniform Deceptive Trade Practices Act when they represented, through advertising, warranties, and other express representations, that the Affected Models were of a particular standard or quality when they were not.

106. Defendants violated the Georgia Uniform Deceptive Trade Practices Act by intentionally installing "defeat devices" in order to obtain the approval of the EPA and failing to disclose the existence and effects of the "defeat device" in its certification to the EPA.

107. Defendants' violations occurred in connection with Defendants conduct of trade or commerce in Georgia and throughout the United States.

108. Defendants' violations caused the Plaintiffs and other members of the Georgia Subclass to purchase their vehicles, which they would not otherwise have purchased had they known the true nature, quality and characteristics of the Affected Models.

109. Defendants willfully and knowingly violated the Georgia Uniform Deceptive Trade Practices Act with the intent to deceive and mislead Plaintiffs and class members and to induce them to purchase Affected Models at higher prices, which did not match the Affected Models' true value.

110. Defendants' violations present a continuing risk to the Plaintiffs the class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

111. As a result of Defendants' unlawful business practices, Plaintiffs and members of the Georgia Subclass have suffered injury-in-fact and/or actual damages.

112. Plaintiffs and members of the Georgia Subclass seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia Uniform Deceptive Trade Practices Act at O.C.G.A.§10-1-373.

113. Plaintiffs plead this count on behalf of all members of the Georgia Subclasss.

**WHEREFORE**, the Plaintiffs pray for relief as follows:

a. That the Court certify this action as a Class Action under Federal Rule of Civil Procedure 23(b)(3); and

b. That process be issued and that the Defendants answer the Complaint within the time allowed by law; and

c. That the Plaintiffs and Class be awarded compensatory damages for the value of the property or property rights that they were wrongfully deprived of; and

d. That the Plaintiffs be awarded punitive damages, treble damages pursuant to appropriate statutes, and attorneys' fees; and

e. That all costs be taxed to the Defendants; and

f. That the Plaintiffs receive such other, further, and general relief to which they may be entitled; and

g. That a jury be empanelled and sworn for the trial of this cause.

Respectfully submitted,

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

By:   /s/ Gary R. Patrick
     Gary R. Patrick, BPR #01941
     Richard A. Schulman, BPR #0990
     Michael A. Anderson, BPR #12368
     Susie Lodico, BPR #23754
     Attorneys for Plaintiffs and Class
     537 Market Street, Suite 202
     Chattanooga, TN 37402
     Telephone: (423) 756-7117
     Facsimile: (423)267-5032
     gpatrick@pbsjlaw.com
     rschulman@pbsjlaw.com
     manderson@pbsjlaw.com
     slodico@pbsjlaw.com

F:\WpDocs\CLIENT\S\Sonnenberg\Complaint.doc